In re TOPOLOFF.

NEW YORK CREDIT MEN'S ASS'N v.
BRANDT et al.

No. 4486.

Circuit Court of Appeals, Fourth Circuit.

Aug. 28, 1939.

David W. Kahn, of New York City (J. Hume Taylor, of Norfolk, Va., on the brief), for appellant.

S. M. Brandt, of Norfolk, Va., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and H. H. WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal by a trustee in bankruptcy from an order made in an ancillary receivership allowing commissions to the referee in the ancillary jurisdiction and fees to the attorney for the ancillary re-

ceiver. The contention of appellant is that the commissions of the referee should have been allowed on the actual value of the property as shown by the price brought at sale, and not on its appraised value, and that the allowance to the attorney was excessive, in view of services performed by him, and was made on report of the referee without opportunity being afforded to the trustee and creditors to except to the report or to be heard before the District Judge with reference thereto.

Bankruptcy proceedings were instituted against one Joseph Topoloff in the Southern District of New York and a receiver was appointed for his property. The greater part of the property consisted of a stock of merchandise in the Eastern District of Virginia which had been manufactured for bankrupt by the Jack Horner Shirt Corporation. A receiver appointed for that corporation by a state court in Virginia attempted to take possession of the merchandise, whereupon ancillary receivers in bankruptcy were appointed by the court below upon application of the primary receiver. These ancillary receivers employed Mr. S. M. Brandt of Norfolk as their attorney; and he obtained an injunction forbidding the receiver of the Jack Horner Shirt Corporation to interfere with the merchandise. The merchandise was appraised at $48,029.32 by appraisers appointed by the court below. It was not sold by the ancillary receivers, however, but was delivered by them to the trustee in bankruptcy and was sold by the trustee a short while after the appraisal for the sum of $39,414.15.

The receiver of the Jack Horner Shirt Corporation filed petitions with the court below attempting to assert liens on the merchandise of which possession had been taken by the ancillary receivers. The total of the liens thus asserted was $15,500.95; but during the hearing before the referee claims in the amount of $7,870.13 were withdrawn and the others were disallowed by the referee. Mr. Brandt represented the ancillary receiver in opposing the allowance of these liens; and in the course of the proceedings made a trip to New York for the purpose of examining bankrupt at a creditor's meeting and there elicited information which resulted in their disallowance.

Mr. Brandt filed with the referee a petition asking that he be allowed a fee of $2,-500 for services rendered, and notice was duly given of a meeting of creditors to consider this and other matters. The trustee in bankruptcy did not attend this meeting but immediately wrote the referee that a creditors' committee, representing a majority in amount of claims, objected to the fee on the ground that it was too high, and that the trustee entertained the same view. The referee, after the meeting, made a report recommending that a fee of $2,000 be allowed and that the referee's commissions be based upon the appraised value of the property instead of upon its value as shown by the sale. This report referred to the protest made by the trustee; but, nevertheless, order was entered confirming it on the same day that it was filed, without giving to the trustee any notice of its contents or any opportunity to be heard before the judge in opposition thereto.

The amount of allowance to the referee in a case such as this is governed by section 40a of the Bankruptcy Act, 11 U.S.C.A. § 68(a), the pertinent portion of which is as follows: "Referees in ancillary proceedings shall receive as full compensation for their services, payable after they are rendered, a fee of $15 deposited in each case with the clerk of the ancillary court at the time the ancillary proceeding is instituted, and 1 per centum commission on all moneys disbursed in the ancillary proceeding to lien creditors, as well as on all moneys transmitted and on the fair value of all property turned over in kind by the court of the ancillary jurisdiction to the court of primary jurisdiction."

It will be noted that the 1 per centum commission is to be computed, in the case of property turned over in kind to the court of primary jurisdiction, not upon the appraised value of such property, but upon its "fair" value; and where the property is sold promptly after being turned over and there is no impeachment of the sale, we see no reason why the price received should not be accepted by all parties as the fair value of the property and commissions allowed accordingly. This is the basis upon which commissions are allowed ancillary receivers, 11 U.S.C.A. 76(a) (1) (4); and it could hardly have been intended that a different valuation should be adopted for computing the referee's compensation. In this case, the compensation of the ancillary receivers was computed on the basis of a valuation of $39,414.15 for the property; and there is something incongruous in giving it a valuation of $48,029.32 for the pur-

pose of computing the referee's compensation.

 As to the allowance of fee to the attorney of the ancillary receivers, we think that, in view of the protest filed with the referee, the trustee should have been given opportunity to except to the referee's report and to be heard before the judge before it was passed upon. This court was impressed with the showing made by the protestants against the amount of the fee; and, if their protest had been heard by the court below, it probably would have resulted in a reduction of the amount of the fee recommended by the referee. At all events, protestants were entitled to opportunity to be heard before the judge, and not merely before the referee; and because they were denied that right by the procedure followed, the allowance must be set aside and the case remanded to the end that they may have opportunity to except to the report and be heard by the judge in opposition thereto.

It is said that the trustee and creditors had notice of the creditors' meeting at which a hearing was had before the referee on the application for the fee as required by General Order No. 42, 11 U.S.C.A. following section 53; but this notice afforded no opportunity to except to the report of the referee, which, as stated, was confirmed by the judge on the very day that it was presented, and no opportunity to be heard before the judge in opposition to the report. Such hearing before the judge is not only inherent in that idea of due process by which all judicial proceedings should be conducted, but it is clearly contemplated in General Order No. 47 providing that reports of referees in all proceedings under the act shall be "subject to review by the court". Review by the court necessarily embraces the idea of a hearing to parties to be affected by the action sought to be reviewed, or at least an opportunity to be heard; and no such opportunity is afforded where the report is confirmed without notice on the day of its filing and the parties affected by it live hundreds of miles away. The mere filing of the report of a referee may, in ordinary cases, be sufficient notice that it will be presented in due course for approval, since all persons are affected with notice of what takes place in regular course of court proceedings to which they are parties; but certainly such filing is not notice that the report will be presented for confirmation on the day of its filing and before exceptions to it can possibly be presented.

For the reasons stated, the order appealed from will be reversed in so far as it relates to the commissions allowed the referee and the fee allowed the attorney for the ancillary receivers, and the case will be remanded for further proceedings not inconsistent herewith.

Reversed and remanded.